UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JEAN T. DIMARIA, Individually, and as Administratrix
of the Estate of GARY DIMARIA, and Derivatively on
behalf of CONTRACT FURNITURE TRANSPORT,
INC., CONTRACT FURNITURE TRANSPORT
ASSOCIATES, INC., CONTRACT FURNITURE
WAREHOUSE CORP., CONTRACT FURNITURE
PAINTING, LLC, CONTRACT FURNITURE
INSTALLATIONS, LLC, DEPENDABLE MOVING
AND STORAGE, INC., DEPENDABLE MOVING
AND STORAGE CORP., SERVICE EAST, INC., and
CONTRACT FURNITURE TRANSPORTATION,
LLC,

                         Plaintiffs,

        - against -

MARTIN GOOR, CFT-IOS, INC., RYAN GOOR,
STEVEN MITNICK, ESQ., as Assignee for the Benefit
of Creditors for CONTRACT FURNITURE
TRANSPORT, INC. and CONTRACT FURNITURE
TRANSPORT, ASSOCIATES, INC., CONTRACT
FURNITURE TRANSPORT, INC., CONTRACT
FURNITURE TRANSPORT ASSOCIATES, INC.,
CONTRACT FURNITURE WAREHOUSE CORP.,
CONTRACT FURNITURE PAINTING, LLC,
CONTRACT FURNITURE INSTALLATIONS, LLC,
DEPENDABLE MOVING AND STORAGE, INC.,
DEPENDABLE MOVING AND STORAGE CORP.,
SERVICE EAST, INC., and CONTRACT
FURNITURE TRANSPORTATION, LLC,

                         Defendants.

**1:09-cv-1011 (JG)**

**AFFIDAVIT OF
JEAN T. DIMARIA**

STATE OF NEW YORK    )
                               ) ss.:
COUNTY OF NEW YORK  )

      Jean T. DiMaria, being duly sworn, deposes and says:

      1.      I am the Plaintiff in this action and submit this affidavit in opposition to the

motion for partial summary judgment made by Defendants Contract Furniture Transport, Inc. ("CFT, Inc."), Contract Furniture Transport Associates, Inc. ("CFT Associates"), and Martin Goor ("Goor") and in opposition to the motions to dismiss filed by: (i) Contract Furniture Transport Associates, Inc. ("CFT Associates"), CFT, Inc. and Goor; (ii) Ryan Goor and CFT-IOS, Inc. ("CFT-IOS"); and (iii) the Assignee for the Benefit of Creditors Steven Mitnick, Esq. (the "Assignee") in the above captioned action.  I make this affidavit based upon personal knowledge unless otherwise indicated.

2.     Goor apparently will go to no bounds to seek to deny me my interest in the CFT entities that my deceased husband Gary DiMaria formed and managed with Goor until Gary's death on July 16, 2006.[1]

3.     I am the sole beneficiary of my husband's Estate,[2] and the value of that Estate in significant part is predicted on the interests my husband had in the CFT Entities and in the related company, L&D Installers, Inc. ("L&D"), owned along with Michael Siracuse ("Siracuse"), and perhaps by Goor, but Goor disputes that.

4.     I understand that before my husband died, he was a stockholder, officer and director of each of the CFT entities.  Upon his death, his stockholder interests in each of the CFT Entities devolved to me by operation of law.

5.     Before his death, the CFT organization for which my husband had worked for almost twenty years fed our family and we lived comfortably.

6.     Goor has misappropriated assets from the CFT Entities and, most recently, apparently conveyed without consideration from his and his son's new company, CFT-IOS, Inc.

---

[1]     A copy of my husband's death certificate is annexed hereto as Exhibit "A".

[2]     Letters of Administration are annexed hereto as Exhibit "B".

("CFT-IOS"), the clients that my husband had nurtured for CFT since the late 1980s.

7.      Of course, those relationships are everything to CFT and what gives CFT its value, and I have been advised by counsel that CFT-IOS has sought to purchase them from the Assignee for some $10,000, a mere pittance.

8.      I may not know the intricacies of a corporate structure, but I do know a stockholder, officer or director of a closely-held organization should not be permitted to take the clients that my husband developed for the past two decades, and give them to a new company that Goor contends his son will be running, and that I, the other stockholder in the first company, get nothing in return.

9.      Now, I have been advised that Goor has put CFT out of business and started a court proceeding, wherein he claimed to have the authority to assign all the assets and liabilities of CFT, Inc. and CFT Associates to an Assignee for the Benefit of Creditors to administer.  First and foremost, I never voted in favor of Goor filing such Assignment Proceedings and, as a fifty (50) percent stockholder in each of the CFT Entities, at least under Goor's view, I had a right to vote on same, and block such filings.

10.      Since my husband's death, I have not received notice of any required annual meetings of stockholders of CFT, or of any director or officer meetings of any of the CFT Entities or other corporate governance-type documents.  I never voted for the election of any directors of the CFT Entities.  Indeed, Goor testified that he is unaware of minutes, resolutions, bylaws, notices and other corporate governance documents, and that they do not "Exist, period. Existed, exist, past tense, present tense."  See Ex. "C"; Transcript of Martin Goor Deposition, dated January 27, 2010, at 25-30.  Accordingly, the filing of such Assignment Proceedings by Goor was unauthorized.

3

11.     I have been informed that the CFT organization is now nothing more than a "shell." I am devastated by what has occurred, and the resulting ruinous financial implications on me.

12.     Of course, I was generally aware that there were multiple names associated with CFT, but they had no meaning to me. CFT was CFT, and that is all that mattered, and that was all that mattered to my husband. I knew that there was an umbrella of CFT companies, but I knew little more than that.

13.     I was the stay at home wife, who had essentially no involvement with the operation of the CFT businesses.

14.     I did not even know what percentages of ownership each of the three men, Goor, my husband, and Siracuse, had in each related company. I had never read any documents setting out any arrangement concerning these mens' "partnership." In fact, Goor testified that he did not even know he was a director of CFT. See Goor Dep. Tr. at 13-15.

15.     The fact is that I was told by my husband on numerous occasions that there was a CFT Stockholders' Agreement[3] that would provide for me if he were to die. I really knew little more than that, and had not seen the Agreement until after my husband passed away. My husband was a successful businessman, and would not have provided me (as we have no children) with a valueless agreement to protect us in the event he passed away.

16.     When I read the CFT Stockholders' Agreement after my husband passed away, and it indicated that it concerns CFT, Inc., that had no impact on me, because I believed that CFT, Inc. was the CFT organization. I have only come to learn after spending tens of thousands of dollars that Goor contends that CFT, Inc. is not CFT, but is a worthless entity. Goor contends

---

[3]     A copy of the Stockholders' Agreement is annexed hereto as Exhibit "D"

instead that it was CFT Associates that earned the majority of the money for the CFT Entities, and that my buy-out right contained in the Stockholders' Agreement, according to Goor, only pertained to CFT, Inc, not to CFT Associates. My deceased husband would never have intended that to be the case.

17.     I have been advised that Goor has taken the position that CFT, Inc is "merely a payroll company" and was not "an operating company." <u>See</u> Affidavit of Martin Goor, sworn to on December 1, 2009, ("Goor Cert.") at ¶11.l; Ex. C, Goor Dep. Tr. at 13-14. That contention is inconsistent and conflicts with Goor also stating that he and my husband had valued CFT, Inc. in 1992 dollars valued such entity at $2,000,000, which was a lot of money then. (Goor Cert. ¶11.j)

18.     Obviously, when the Stockholders' Agreement was entered into in 1992 by my husband and Goor, CFT, Inc. was meant to be the profit center, making the money for the CFT umbrella entities, because if it was intended to be CFT's "payroll" company such high value would never have been attributed to it.

19.     Goor has been actively punishing me. First, he refused to buy me out of the CFT Entities that are worth millions and offered me a pittance. Then he sues me in New Jersey,[4] seeking to, among other things, recover $484,000 he claims to have paid to have CFT/L&D settle with the Carpenters Union,[5] which I also personally contributed to in the amount of $284,000, and which monies I have sought to recover from Goor in this litigation.[6] In the New Jersey Action, Goor also claimed that my husband engaged in fraud and if he or CFT is held liable to

---

[4]     Although a significant stockholder in L&D, Siracuse had not advised me of the commencement of the L&D's action against CFT and Goor prior to its initiation.

[5]     My understanding is that the payment of $3,000,000 to the Carpenters Union resulted in the United States Attorneys' Office discontinuing their investigation of Goor and Siracuse, who had been called down to speak to the prosecutors, L&D and CFT.

[6]     A copy of the various Third Party Complaints filed against me are collectively annexed hereto as Exhibit "E."

L&D for the $11,000,000 sought, then my husband's Estate and I should be liable to him for that amount. The fact is that after I was sued in the New Jersey Action, I had only one choice, but to sue Goor in order to enforce my buy-out rights and to recover the monies he has diverted from the CFT Entities, and which action I recently amended when I learned what he had done with CFT-IOS.

20.     My understanding from my husband is that he was a director, officer and shareholder of each of the CFT Entities since each were formed in or about 1988, until his death in July 2006. Upon my husband's death, as the sole beneficiary of his Estate, all of his shares passed to me by operation of law. As such, I have been a shareholder of each of the CFT Entities since then.

21.     Because I am the only other shareholder of the CFT Entities according to Goor, (other than Goor himself), I am the only person who could bring a derivative action (if one is even required, as I have been advised that I am entitled to bring claims directly) on behalf of the CFT Entities. Goor has refused to comply with the Stockholders' Agreement. He is responsible for denuding and diverting the assets of the entities of their value to my detriment. He has transferred certain of those assets without adequate consideration to another company that he and his son manage. As such, it is self-evident that asking Goor to commence an action *against himself* would be futile. This is particularly so where I understand that he is the only officer or director of the CFT Entities since the death of my husband, and his actions since then have shown that he is out to get me, by, among other things, suing me in New Jersey, accusing my husband of fraud, and transferring the assets of CFT, Inc. and CFT Associates without my authorization or permission to an assignee.

22.     As I have been explained, given the facts as I have been explained them, the

6

Goor-chosen Assignee for the Benefit of Creditors similarly would not appropriately prosecute any action on my behalf, as he is fatally conflicted. The Assignee's interests are aligned with Goor, his son, and CFT-IOS, and he is selling the "customer list" of CFT to CFT-IOS for a mere $10,000. Moreover, I have been advised by my counsel that the Assignee's accountant has said that the Assignee has never brought an action to seek to recover the "goodwill" of a company, and the Assignee would have brought such an action already if he intended on doing so, rather than instead move for permission to sell the customer list of CFT for a pittance to CFT-IOS, company knowingly run by Goor's son, and in which Goor has a direct or indirect interest.

23.     The Assignee simply has already demonstrated that he has no incentive to and will not engage in a time consuming and costly litigation against Goor. Further, his mandate of only examining the actions of the assignor for the four months prior to the date of assignment would not allow him to understand or address even the tip of the iceberg of issues in this matter.

24.     In the end, it is clear that what has occurred should not be permitted. Here, there was a company with two shareholders (CFT), and the now controlling shareholder (Goor) has siphoned off their assets for his own personal use and into a second corporation (CFT-IOS) that is owned by his son, and which he indirectly controls. This cannot be permitted by law or by equity and the second corporation (CFT-IOS), as well as the individuals who planned this scheme (the Goors), including the controlling shareholder, should be held liable.

25.     I have read the foregoing Affidavit, as well as my Amended and Supplemental Complaint.  I hereby verify that both are true to my own knowledge, except as to those matters stated to be set forth upon information and belief, and as to those matters, I believe them to be true.

_JEAN T. DIMARIA_

Sworn to before me this
28th day of January, 2010

_Notary Public_

MATTHEW R. MARON
Notary Public, State of New York
No. 02MA6141948
Qualified in New York County
Commission Expires 03/06/2010

8