UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEAN T. DIMARIA, Individually, and as Administratrix of the Estate of GARY DIMARIA, and Derivatively on behalf of CONTRACT FURNITURE TRANSPORT, INC., CONTRACT FURNITURE TRANSPORT ASSOCIATES, INC., CONTRACT FURNITURE WAREHOUSE CORP., CONTRACT FURNITURE PAINTING, LLC, CONTRACT FURNITURE INSTALLATIONS, LLC, DEPENDABLE MOVING AND STORAGE, INC., DEPENDABLE MOVING AND STORAGE CORP., SERVICE EAST, INC., and CONTRACT FURNITURE TRANSPORTATION, LLC,<br><br>       Plaintiffs,<br><br>- against -<br><br>MARTIN GOOR, CFT-IOS, INC., RYAN GOOR, STEVEN MITNICK, ESQ., as Assignee for the Benefit of Creditors for CONTRACT FURNITURE TRANSPORT, INC. and CONTRACT FURNITURE TRANSPORT, ASSOCIATES, INC., CONTRACT FURNITURE TRANSPORT, INC., CONTRACT FURNITURE TRANSPORT ASSOCIATES, INC., CONTRACT FURNITURE WAREHOUSE CORP., CONTRACT FURNITURE PAINTING, LLC, CONTRACT FURNITURE INSTALLATIONS, LLC, DEPENDABLE MOVING AND STORAGE, INC., DEPENDABLE MOVING AND STORAGE CORP., SERVICE EAST, INC., and CONTRACT FURNITURE TRANSPORTATION, LLC,<br><br>       Defendants. | **DECLARATION OF RICHARD J. SHORE** |

RICHARD J. SHORE declares as follows:

   1.  I am a member of the Bar of this Court and an associate at the firm of Ganfer & Shore, LLP. I submit this Declaration in opposition to the motion for partial summary judgment made by Defendants Contract Furniture Transport, Inc. ("CFT, Inc.") and Martin Goor ("Goor")

1

and in opposition to the motions to dismiss filed by: (i) Contract Furniture Transport Associates, Inc. ("CFT Associates"), CFT, Inc., and Goor; (ii) Ryan Goor and CFT-IOS, Inc. ("CFT-IOS"); and (iii) the Assignee for the Benefit of Creditors Steven Mitnick, Esq. (the "Assignee"). I make this Declaration based upon personal knowledge unless otherwise indicated.

2. I personally conducted the inspection of the documents made available to Plaintiff's counsel by CFT, Inc. and Goor in this action including: (i) the approximately 350 boxes contained on 13 skids located at the former office and warehouse of CFT, Inc. and CFT Associates in Bayonne, New Jersey; (ii) the approximately 150 boxes located at the office and warehouse of CFT-IOS in Secaucus, New Jersey; (iii) the approximately 40 boxes located at the Assignee for the Benefit of Creditor's accountant's warehouse in Patterson, New Jersey; and (iv) the 10 boxes located at the Assignee's accountants office. In total, Mrs. DiMaria paid for me to review a document dump of millions of pieces of paper of generally unorganized, irrelevant, nonresponsive materials. We nonetheless reviewed the documents at considerable expense to Mrs. DiMaria, which resulted in finding critical documents, some of which are attached to Mrs. DiMaria's opposition papers. Plaintiff respectfully submits these critical documents mandate a denial of each of Defendants' motions.

3. On November 19, 2009, I arrived at the former office and warehouse of CFT, Inc. and CFT Associates in Bayonne, New Jersey, and Goor was waiting for my arrival, as scheduled with Goor's counsel. He was on his cell phone sitting in his car. When he exited his car, he continued speaking on his cell phone for a short time, during which time I clearly and unmistakenly overheard his side of the conversation in which he was discussing the new "CFT" entity (clearly in reference to CFT-IOS) that he was associated with. He was talking to someone specifically about how he was continuing to use the "CFT" name, presumably to cash in on the

reputation and "good will" of the "CFT" name, but he said that he had changed the first initial of "CFT," from "Contract" to "Commercial" in an attempt to make the corporate entities distinct.

4. The warehouse was in the same facility as, and adjacent to, CFT's offices. The older or archival "storage" documents that I went to examine were located in the warehouse, which was extremely cold. The documents themselves were contained in boxes which were filthy. There, over the course of a few days, I attempted to review approximately 350 boxes contained on 13 skids. There was absolutely no manner of organization whatsoever as neither the boxes nor the skids contained any semblance of labeling.

5. The offices generally had been cleared out, including the file cabinets and desk drawers having being emptied. However, one of the cubicles in the office contained a garbage can that was overflowing with documents. I observed that some of those documents might be relevant to the litigation, and I knew that, at the very least, the destruction of relevant documents while discovery was ongoing is improper. I photographed the documents in the garbage and asked for and received permission from the facility owner (as CFT had moved out) to remove the documents and brought them back to my office.[1] Many of the documents that had been in the garbage were relevant to the litigation, and nearly all were responsive.[2] Not aware that I knew that CFT documents had been thrown out, Goor testified at his deposition that he did not believe he told anyone to discard CFT documents. See Ex. "C"; Transcript of Martin Goor, dated

---

[1] A copy of a photograph of the documents in the garbage can is annexed hereto as Exhibit "X".

[2] Copies of some examples of the relevant documents that were discarded are annexed hereto as Exhibits "Y" – "CC": a copy of a check from CFT Associates' operating account to CFT Associates' payroll account for $30,000 is annexed hereto as Exhibit "Y"; a copy of a check from CFT, Inc.'s operating account to CFT, Inc.'s payroll account for $40,000, made payable to the order of "Contract Furniture Transport" (no entity designator) is annexed hereto as Exhibit "Z"; a copy of checks made out to "Contract Furniture Transport" (no entity designator) is annexed hereto as Exhibit "AA"; a copy of a list of union employees from Local 617 addressed to "Contract Furniture Transport" with no entity designator is annexed hereto as Exhibit "BB"; and copies of two financial documents that contain accounting information of numerous CFT entities on a single page, that show the amount of money in the bank accounts for each entity, and show transferring of money from CFT entity to CFT entity are annexed hereto as Exhibit "CC".

3

January 27, 2009, at 50-51. Of course, what other relevant documents that also might have been thrown out will never be known.

6. I also undertook document reviews of documents stored at CFT-IOS's office and warehouse in Secaucus, New Jersey. These were the documents that had been described by counsel for CFT, Inc., when CFT was operating, as CFT's "active" files. On or about December 8, 2009, while I was reviewing documents at CFT-IOS' office, Goor came into the office. I recognized him from meeting him at the former CFT office and warehouse less than a month earlier. We shook hands and exchanged brief pleasantries. Later, before he left the facility, Goor said to me "as I am sure you understand, I'm not supposed to be here…".

7. On December 8-10, 2009, during my inspection of documents at CFT-IOS' office and warehouse, I observed that the same trucks that had been parked outside of the former CFT warehouse in Bayonne in November, were now parked outside of the CFT-IOS office and warehouse in Secaucus. On January 8, 2010, I returned to CFT-IOS' facility in Secaucus, and I took pictures of the trucks that were there, which included the license plate numbers and identification numbers located on the side of the truck. I cross-referenced the identification and license plate numbers from the pictures I had taken with a list identifying CFT trucks that I had uncovered during discovery. The numbers matched, confirming that CFT-IOS was using the same trucks that were formerly used by CFT.[3]

8. On December 16, 2009, with the authorization of the Assignee and his accountant, I went to the Assignee's accountant's office to inspect documents, where ten boxes were being stored. During the course of a conversation with the Assignee's accountant, the accountant stated to me that he had been doing Assignment for the Benefit of Creditors work for

---

[3] Copies of the photographs of two trucks and a list of CFT trucks confirming that CFT-IOS was using two formerly CFT trucks is annexed hereto as Exhibit "DD".

4

many years and this is the first instance where he recalls that two "so-called" separate entities were part of a combined Assignment for the Benefit of Creditors.

9. On January 7 and 14, 2010, with the authorization of the Assignee and his accountant, I went to the warehouse maintained by the Assignee's accountant in Patterson, New Jersey. In continuing my inspection of CFT documents that had been moved now to a third warehouse in the prior two months, I copied certain documents, including legal bills from the law firm of OlenderFeldman, LLP, counsel for CFT Associates, CFT, Inc. and Goor in this matter.[4]

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York,
January 29, 2010

                                             RICHARD J. SHORE

---

[4] Copies of excerpts of some of those bills are annexed hereto as Exhibit "EE".