UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JEAN T. DIMARIA, Individually, and as Administratrix
of the Estate of GARY DIMARIA, and Derivatively on
behalf of CONTRACT FURNITURE TRANSPORT,
INC., CONTRACT FURNITURE TRANSPORT
ASSOCIATES, INC., CONTRACT FURNITURE
WAREHOUSE CORP., CONTRACT FURNITURE
PAINTING, LLC, CONTRACT FURNITURE
INSTALLATIONS, LLC, DEPENDABLE MOVING
AND STORAGE, INC., DEPENDABLE MOVING
AND STORAGE CORP., SERVICE EAST, INC., and
CONTRACT FURNITURE TRANSPORTATION,
LLC,

                              Plaintiffs,

              - against -

MARTIN GOOR, CFT-IOS, INC., RYAN GOOR,
STEVEN MITNICK, ESQ., as Assignee for the Benefit
of Creditors for CONTRACT FURNITURE
TRANSPORT, INC. and CONTRACT FURNITURE
TRANSPORT, ASSOCIATES, INC., CONTRACT
FURNITURE TRANSPORT, INC., CONTRACT
FURNITURE TRANSPORT ASSOCIATES, INC.,
CONTRACT FURNITURE WAREHOUSE CORP.,
CONTRACT FURNITURE PAINTING, LLC,
CONTRACT FURNITURE INSTALLATIONS, LLC,
DEPENDABLE MOVING AND STORAGE, INC.,
DEPENDABLE MOVING AND STORAGE CORP.,
SERVICE EAST, INC., and CONTRACT
FURNITURE TRANSPORTATION, LLC,

                            Defendants.

**DECLARATION OF
MARK A. BERMAN**

**1:09-cv-1011 (JG)**

MARK A. BERMAN declares as follows:

      1.      I am a member of the Bar of this Court and of the firm of Ganfer & Shore, LLP. I

submit this Declaration in opposition to the motion for partial summary judgment made by

Defendants Contract Furniture Transport, Inc. ("CFT, Inc.") and Martin Goor ("Goor") and in

opposition to the motions to dismiss filed by: (i) Contract Furniture Transport Associates, Inc.

("CFT Associates"), CFT, Inc. and Goor; (ii) Ryan Goor and CFT-IOS, Inc. ("CFT-IOS"); and

(iii) the Assignee for the Benefit of Creditors Steven Mitnick, Esq. (the "Assignee").  I make this

Declaration based upon personal knowledge unless otherwise indicated.

## DISCOVERY ISSUES

2.      Defendants Goor, CFT, Inc. and CFT Associates have affirmatively produced

virtually no documents to Plaintiffs.  Instead, due to their obfuscatory behavior and refusal to

physically produce documents, Magistrate Judge Levy ordered that they make their documents

available to Plaintiff.  It took months for CFT, Inc. and CFT Associates' archival "storage"

documents to be made available, and when the documents were finally provided, they were

produced in a filthy and extremely cold warehouse in a completely unorganized manner.

Approximately 350 boxes of documents were provided in this environment, and despite the

unacceptable conditions, we were able to uncover relevant documents.  Moreover, in the former

CFT Inc. and CFT Associates' offices adjacent to the warehouse, my colleague found a garbage

bin full of relevant documents that we submit were improperly thrown out in violation of the

Federal Rules.  See Declaration of Richard J. Shore, at ¶ 5, dated January 29, 2009 ("Shore

Decl.").

3.      With respect to CFT's so-called "active" documents, CFT first put up obstacles to

their availability for months, and when they had no choice but to make them available, CFT

claimed that they could only be made available during non-business hours so that CFT's business

operations supposedly would not be disrupted.  As a result, Magistrate Judge Levy directed that

Plaintiff review them afterhours or on the weekend.  However, immediately prior to Plaintiff's

scheduled review, the documents were boxed up and removed from CFT's office, and were

2

trucked to (the allegedly unrelated) CFT-IOS' new location. Finally, once a date to review the formerly "active" documents was re-scheduled, CFT, Inc. and CFT Associates filed their Assignments for the Benefit of Creditors, and asserted that they no longer had a right to such documents because they now belonged to the Assignee. Defendants further explained that, in any event, such documents had already been or were in the process of being moved from CFT-IOS' warehouse to the accountant for the Assignee's office and warehouse. Ultimately, Plaintiff was forced to go to four distinct locations to review CFT's documents.

4.      The above "shell game" had gone on for months, and Plaintiff submits that such "gameplaying" is emblematic of the same "shell game" that Defendants have played with the assets of the CFT organization. Reviewing of such formerly "active" documents has continued into this month and, regretfully, of necessity, is still incomplete.

5.      CFT's electronically stored materials were also simply dumped on Plaintiff. CFT produced a hard drive copy of their computer server, forcing Plaintiff to review the whole of it, regardless of relevancy. What became immediately apparent, however, is that the hard drive failed to contain e-mail messages. Plaintiff put Defendants on notice of this failure, but Defendants took the position that whatever e-mails existed were contained on the server, a full hard drive copy of which had been purportedly produced to Plaintiff.

6.      Plaintiff notified Magistrate Judge Levy about this situation, and notwithstanding CFT and Goor's representations made to the contrary, Magistrate Judge Levy provided Plaintiff with unprecedented permission to recopy CFT's server and to review it to determine whether it contained e-mail messages.

7.      Considering Defendants' systematic refusal to cooperate and general obstructionist conduct, it was no surprise that e-mail messages were contained on the version of

3

the server that Plaintiff's counsel was permitted to copy.

8.      However, once Plaintiff had possession of CFT's e-mails, Defendants objected to Plaintiff's counsel reviewing them due to their contention that this version of their server contained privileged documents (although no such objection had previously been asserted when counsel for CFT and Goor dumped a hard drive copy of CFT's server on Plaintiff that excluded e-mails).  In accordance with our ethical obligations, we have not yet conducted a review of CFT's e-mails.

9.      What became apparent is that e-mails had not been on the hard drive that we had been provided by CFT's counsel, but were placed on CFT's server **just prior** to Plaintiff's counsel, pursuant to Magistrate Judge Levy's order, being permitted to visit the CFT site to copy its server.

10.      Outrageously, Plaintiff counsel also learned during that visit that CFT's e-mail messages had never been previously saved to CFT's server, but that CFT's e-mails were hosted off-site.  The fact that the CFT e-mail system was maintained off-site is in direct contradiction to the representations made by Defendants' counsel to Magistrate Judge Levy.  Goor confirmed the fact that CFT's e-mails were hosted off-site during his custodian of records deposition taken two days ago.  (Ex. C, Goor Dep. Tr. at 64-65)  If Goor through his counsel had not misrepresented the location of CFT's e-mails to Plaintiff and Magistrate Judge Levy, Plaintiff would have subpoenaed CFT's e-mails months ago from CFT's host to obtain them directly from such source.

11.      Once the location of e-mails was established, CFT, Inc. and CFT Associates had already filed for an Assignment for the Benefit of Creditors.  Defendants thus asserted they could not afford to review and produce any part of the 185,000 e-mails they, as well as Goor,

4

possessed, many of which, no doubt, contain attachments.  Instead, CFT and Goor asserted that

Plaintiff should split the cost of such review, which we refused.  This issue was joined before

Magistrate Judge Levy on January 21, 2010.   CFT and Goor's counsel, however, boldly

represented that, no matter how the Court ruled, the review and production of e-mails could not

be completed by the time these opposition papers where to be filed.  Thus, the issue of an

immediate order to review and produce them became moot, even though Plaintiff had been

seeking these e-mails since June 2009. As such, to this day e-mails still have not been produced.

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT BEEN ABLE TO CONDUCT ALL OF THE APPROPRIATE AND NECESSARY DISCOVERY NEEDED TO OPPOSE SUCH MOTION

**A.**     **Plaintiff Has Been Denied Her Right To Conduct Full Documentary Discovery**

12.     Plaintiff should not be required to defend against CFT, Inc. and Goor's partial

motion for summary judgment where CFT has intentionally and strategically denied producing

any electronically stored e-mail messages.

13.     The production of e-mails could, for instance, contain admissions from Goor

and/or Gary DiMaria, Plaintiff's deceased husband, concerning the intent of the Stockholders'

Agreement and to which entities it applied.  Such would clearly be relevant evidence, whether it

be considered course of conduct or *alter ego* evidence, even if such e-mails were communicated

after the subject Stockholders Agreement was entered into.

14.     Goor is a vociferous user of e-mails (see Knee Affidavit at ¶ 11) and the fact is

that if there is an e-mail from Goor to Mr. DiMaria indicating that the Stockholders' Agreement

applies to CFT Associates or any other CFT entity, or that CFT Inc. and CFT Associates are

*alter egos* of themselves, Plaintiff submits such would be an admission dispositive in opposing

5

Defendants' partial motion for summary judgment.  In fact, such an admission is quite possible, considering that, as recently as December 2008, Goor admitted that "Jeanne [sic] [DiMaria] has demanded that she be bought out by Goor of her interest in ***CFT Associates*** pursuant to the Stockholder [sic] Agreement" and "Jeanne [sic] [DiMaria] is not entitled to be bought out by Goor of her interest in ***CFT Associates*** pursuant to the Stockholder [sic] Agreement." (Ex. E) (emphasis added).  Goor has, however, since withdrawn this admission.  Equally pertinent would be any e-mail that addresses the applicability of the buy-out provision in the Stockholders' Agreement and Goor's understanding thereof.

15.     While CFT, Inc. and Goor have claimed that e-mails would be irrelevant, as a matter of law, this Court surely would not grant Goor and CFT, Inc.'s motion for partial summary judgment where there are admissions contradicting Defendants' position as to the intent of the Stockholders' Agreement.  That e-mails are relevant to Plaintiff's defense is only underscored by the following entry on Goor's counsel's legal bill:

> *May 18, 2009*          *"review e-mail from M. Goor and attached contract outline*
> *with G. DiMaria."*

(Shore Decl. ¶ 9, Ex. EE)

16.     First, the above entry is inconsistent with Goor's testimony that he has never searched for relevant e-mails. (Ex. C, Goor Dep. Tr. at 53-54) Second, it demonstrates that e-mails would be relevant to Plaintiff's defense to the subject motion.

17.     While Plaintiff does not know the substance of the e-mail referred to above, such entry demonstrates why relevant e-mails need to be provided to Plaintiff before this Court can appropriately rule on CFT, Inc. and Goor's motion for partial summary judgment. Thus, at a minimum, such motion should be denied because it is premature.

18.     CFT, Inc. and Goor's obstinate refusal to produce e-mails is particularly troubling when viewed in conjunction with the convenient "unavailability" of other CFT documents that could help Mrs. DiMaria prove her case. Additional information sought by Plaintiff that has not yet been produced includes drafts of the Stockholders' Agreement, which we know, through the Knee Affidavit at ¶ 8, existed as of two months ago, although Goor claims that such does not exist.

19.     Goor claims that he and Mr. DiMaria obtained insurance in relation to the Stockholders' Agreement. Insurance documents existed as of two months ago, see Knee Affidavit at ¶ 8, but have not been produced to Plaintiff, and Goor claims they do not exist.

20.     Conveniently, only two days ago during Goor's deposition, did we learn that CFT "purged" CFT, Inc. documents in November/December 2007. This fact had never previously been disclosed to Plaintiff or Magistrate Judge Levy during the numerous discovery conferences that have taken place. Such issue is only compounded by the fact that Goor testified that he has no idea what records were preserved. (Ex C, Goor Dep. Tr. at 21-26). Such "purging" inappropriately occurred during the period that Goor, Michael Siracuse, L&D and CFT were seeking to resolve the criminal investigation instituted by the United States Attorneys' Office and to settle with the Carpenters Union. In fact Goor had been called to speak with the prosecutors and was contributing money, along with Plaintiff, to settle such matter. (DiMaria Aff. ¶ 19) Yet despite this, potentially relevant documents were spoliated by Goor.

21.     Also only two days ago, Goor conveniently testified that he is unaware who drafted the Stockholders' Agreement. He testified "[y]our grandmother [referring to me] could have – no disrespect, she could have drafted it. I don't know." Goor also could not remember

7

the name of the undisclosed insurance broker, whose advice he claims to have relied upon in entering the Stockholders' Agreement. (Ex. C, Goor Dep. Tr. at 30-32; Goor Aff. ¶ 10)

22.     Additionally, few if any corporate governance documents have been produced. As recently as yesterday, an entire blank corporate kit for CFT, Inc. and CFT Associates was produced.  The justification for failing to produce such relevant documents until such time was that Goor claimed to have just found them on Monday, January 25, 2010 (Goor Dep. Tr. at 23-25).  This claim is rebutted, however, by Goor's own counsel who claimed to know of their existence at least month ago.[1]  That such kits are completely blank only further demonstrates that the CFT Entities never followed corporate formalities. Moreover, the failure to produce these documents until the very last minute, as well as the contradictory statements made by Goor and his counsel, call into further question Goor's credibility as it relates to the intent of the Stockholders' Agreement, and his compliance with his obligations under the Federal Rules of Civil Procedure.

23.     The above needs to viewed in light of the fact that Goor and CFT have produced virtually no documents to Plaintiff, but instead have forced Plaintiff's counsel to rummage through millions of pages of documents, in hundreds of boxes, contained in four different locations, including in filthy and extremely cold warehouses, to find even those documents provided to the Court in connection with this motion.  See Shore Decl.¶¶ 2 and 4.

**B.     CFT Documents Have Been Thrown Out**

When asked two days ago whether "he ever give instructions to anybody to discard or throw out CFT documents", Goor answered equivocally – "I don't believe so." (Ex. C, Goor Dep. Tr. at 50)  Goor apparently was unaware that my colleague, when reviewing documents at

---

[1]        A copy of Goor's counsel's e-mail dated December 29, 2009 is annexed hereto as Exhibit "FF".

the former CFT warehouse, found significant amounts of relevant and responsive CFT documents thrown out in the garbage. <u>See</u> Shore Decl.¶ 5.  However, as Knee's Affidavit explains, discarding of documents at CFT is something that would only be done with the authorization of Goor, and Goor does not discard documents. <u>See</u> Knee Aff. ¶ 6.  Thus, the fact that there were CFT documents discarded raises suspicions.

**C.    <u>Depositions Have Not Taken Place</u>**

24.    Plaintiff has been denied the opportunity to question Goor about the statements he made in his affidavits and pleading.  Plaintiff also has not been able to test Goor's statements against the documents and information that Plaintiff has obtained from former employees of Goor, which directly contradicts Goor's statements in many instances.

25.    Plaintiff is entitled to question Goor about the formation and intent of the Stockholders' Agreement and the application of the Agreement's terms.  This is particularly true where Goor himself has specifically felt the need to attest to the Stockholders' Agreement's intent. (Goor Aff. ¶¶ 10-12, 15); <u>See</u> CFT, Inc/Goor SJ Mem. at 10 (alleged "*purpose* of the Agreement [is] an estate planning tool tied to insurance"); (the "entire *purpose* of the CFT Stockholders Agreement has been nullified"); Goor Aff. ¶ 13.h (plaintiff is entitled to question Goor on his assertion that the $2,000,000 Certificate of Agreed Value "is the same amount of insurance that Gary and I initially intended on obtaining made upon the recommendation of the insurance broker who set up the CFT Stockholders  Agreement in the first place") (emphasis added).

26.    During the limited questioning of Goor during his custodian of records deposition, Goor claims not to know why CFT, Inc. was formed in relation to CFT Associates.  (Ex. C, Goor Dep. Tr. at 26-27)  Goor also claims not to know where CFT's financial documents are located

from those early years of CFT (e.g. 1988-1994). (Ex. C, Goor Dep. Tr. at 46-48) Such testimony is all too convenient. We suspect that Goor's recollection will be refreshed by documents put before him during his deposition on the merits (not solely as a custodian of records) to be taken after the deposition of CFT's accountants. In fact, such documents we submit will further demonstrate the existence of material issues of fact as to the intent of the Stockholders' Agreement.

27.    Also, as discussed above, Plaintiff is unaware of the name of the undisclosed insurance broker that he references in his affidavit (one would never have thought based on Goor's Moving Affidavit that such broker allegedly was not even his, but instead, conveniently, was the broker of his deceased partner Mr. DiMaria). (Goor Aff. ¶ 3) We will have to probe further into the CFT documents to see if the insurance broker's name can be discerned, because we do not presently know who such person is and we had presumed, albeit incorrectly, that Goor would proffer his name. That person very well may have relevant knowledge as to the intent of the Agreement if he or she can be located.

28.    Again, we had thought that Goor would have known who had drafted the Stockholders' Agreement so that he or she could be deposed concerning its intent. We had also anticipated issuing a subpoena seeking contemporaneous related documents, but Goor purportedly has no idea of the name of such attorney. (Ex. C, Goor Dep. Tr. 31-32) Goor's affidavit in support of his motion for partial summary judgment, submitted two months ago, stated that he and Mr. DiMaria "were often represented by counsel" (Goor Aff. ¶ 14) and counsel for Goor during oral argument on November 12, 2009 noted that when Messrs. Goor and

DiMaria "went through corporate formalities, they had attorneys."[2]  Two days ago, however, he testified that he does not know the name of any attorney used by CFT, Inc.  Unlike when he is making statements in an Affidavit, at deposition time, when questions are asked of Goor, his mind is blank. (Ex. C, Goor Dep. Tr. 31-38).

29.    Again, where is the missing stockholder agreement file that Ms. Knee is referring to? (Knee Aff. ¶ 8)  In fact Goor now claims that he was "forced" to sign the Stockholders' Agreement. (Ex. C, Goor Dep. Tr. 29-30)

30.    Also CFT's accountants need to be deposed. CFT's accountants have reviewed and generated CFT documents for decades.  They have spoken to CFT's principals and employees about the entities' finances, corporate formation organization, and presumably the Stockholders' Agreement, since as long ago as the early 1990s, if not earlier.  They also would likely be responsible for such decisions as consolidating financial reports for all of the entities, presumably due to their intertwined nature.

31.    Goor incredibly testified that CFT would not maintain any appraisals, valuations or net worth documents.  (Ex. C, Goor Dep. Tr. at 39-41, 46-49 )  Instead, he testified that those documents would be in the possession of CFT's accountants. (Ex. C, Goor Dep. Tr. at 39-41) Since straight answers concerning the production of documents have not been forthcoming from Goor or his counsel, deposition of CFT's accountants is particularly pertinent as to both document retention and the substance of Plaintiff's claims.

32.    When Goor was asked to identify the names of CFT's accountants prior to his current accountants, he claimed that he could not remember who they were.  (Ex. C, Goor Dep. Tr. at 17, 37)  Plaintiff believes, however, that upon deposing CFT's current accountants, and

---

[2]       Annexed hereto as Exhibit "GG" is the relevant excerpt from the Court conference held on November 12, 2009, at p. 11.

reviewing certain documents in their possession, Plaintiff will be able to figure out who the previous accountants were and subpoena them.

33.    It is also now understood that CFT's accountants were Goor's personal accountants and have been since before CFT was formed. (Id. at 43-44)  As such, they very likely possess relevant information concerning the time period when the Stockholders' Agreement was entered into, including perhaps the intent of the parties.  In addition, they may even have knowledge as to why CFT, Inc., supposedly only a "payroll" shell corporation, was valued by Goor and Mr. DiMaria in 1992 at two million dollars.  I find it curious that even though I have spoken to such accounting firm, Levine, Pohl, Schaeffer & Fink (the "Fink Firm") on multiple occasions (until this month when they retained counsel), in our conversations, they never disclosed that they also personally represented Goor, and have done so for more than twenty years.

34.    Having said that, we suspect that the Fink Firm, in order to avoid production of documents or attending depositions will provide a reply affidavit claiming to have no relevant knowledge.  However, regardless of their stated position, Plaintiff is entitled to probe their understanding of matters through a deposition.

35.    Plaintiff should also be permitted to have the opportunity to depose Goor's "partner" Michael Siracuse, who worked alongside of Goor for the past two decades.  Moreover, Mr. Siracuse should also possess intimate knowledge of the *alter ego* nature of the CFT Entities, for which he asserts he is a partner, as well as information concerning the intent and meaning of the Stockholders' Agreement.

36.    In addition, Mark Vignoles should be deposed.  Mr. Vignoles, President and Owner of Service West, brought his company from California to New Jersey to join forces with

CFT and Goor. Vignoles' stated position regarding the relationships between the CFT Entities is critical information, as evidenced by his accompanying affidavit.

## THE NEW JERSEY ACTION

37.    Goor's three Third Party Complaints asserted against Mrs. DiMaria are annexed hereto as Exhibit "E". Goor in his first Third Party Complaint seeks in the Fifth Cause of Action declaratory judgment with regard to the Stockholders' Agreement entered into with *CFT Associates.* Also annexed hereto is L&D's motion seeking to amend its complaint to allege, among other things, that Mr. Siracuse had an ownership interest in CFT, which the New Jersey court denied permission to amend because the motion was not timely filed.[3]

## THE ASSIGNMENT

38.    On or about November 17, 2009,[4] Goor filed Assignments for the Benefit of Creditors on behalf of CFT, Inc. and CFT Associates with Steven Mitnick as the Assignee.[5]

39.    On December 14, 2009, counsel for Goor and CFT, Inc. affirmatively advised this Court that "Goor did not form CFT-IOS; Goor is not an officer or director of CFT-IOS; Goor is not an owner of CFT-IOS; Goor is not an employee of CFT-IOS; CFT-IOS does not own any of

---

[3]    A copy of L&D's proposed Complaint is annexed hereto as Exhibit "HH".

[4]    Copies of the CFT, Inc. and CFT Associates Assignment filings are annexed hereto as Exhibit "II".

[5]    Copies of the docket sheets for the following three actions filed in the Southern District of New York entitled are annexed hereto as Exhibit "JJ": Sysco Food Services of Metro New York, LLC v Jekyll & Hyde, Inc., Civ. Action No 08-CV-02958 (S.D.N.Y. 2008); Sammart Fashion Co., Ltd v. Wear Me Apparel Corp., Civ. Action No. 07-cv-4035  (S.D.N.Y. 2007); and Banco Santander Puerto Rico v. Homer, Civ. Action No. 92-cv-05914 (S.D.N.Y. 1992).

    Annexed hereto as Exhibit "KK" are the pertinent website pages from SM Financial Services Corporation, a company founded by the Assignee.

the assets of CFT Assoc. or CFT, Inc., and cannot obtain same without prior judicial approval in the currently pending New Jersey Assignment for the Benefit of Creditors Actions."[6]

40.    On or about January 6, 2010, the Assignee mailed to Plaintiff's counsel by certified mail copies of certain Assignment documents, as well as unfiled copies of the Assignee's motion seeking approval to sell assets of CFT Associates, including CFT's Inc.'s customer list to CFT-IOS, which motion has been adjourned until February 4, 2010.[7]

41.    On or about January 13, 2010, CFT-IOS moved in the CFT Associates Assignment Proceeding for the release of certain administrative expenses, which motion has also been adjourned until February 4, 2010.[8]    A copy of the service list in the Assignment Proceedings is annexed thereto on pages 3-5.

42.    On January 29, 2010, Plaintiff cross-moved to dismiss both Assignment Proceedings on the basis that Goor did not have the authority, without the consent of his fifty percent shareholder, Mrs. DiMaria, to initiate such proceedings, as well as to stop the sale of CFT's customer list to CFT-IOS.[9]    Counsel for CFT, Inc. CFT, Associates and CFT-IOS have objected to such cross-motion being filed.[10]

43.    On December 7, 2009, I spoke with Timothy King, an accountant working for Bederson & Company, LLP, who are the accountants for the Assignee.  Bederson & Company,

---

[6]    A copy of Defendants' counsel's letter to Judge Gleeson is annexed hereto as Exhibit "LL".

[7]    A copy of such January 6, 2010 letter, along with its attached motion papers, is annexed hereto as Exhibit "MM".

[8]    A copy of CFT-IOS' motion papers is annexed hereto as Exhibit "NN".

[9]    A copy of Plaintiff's papers are annexed hereto as Exhibit "OO".

[10]    A copy of Plaintiff's New Jersey counsel's letter advising the New Jersey Court of the CFT Defendants and CFT-IOS' refusal to adjourn the February 4, 2010 hearing to address such cross-motion is annexed hereto as Exhibit "PP".

LLP are presently in possession of the CFT documents that the Assignee took possession of. During the course of my conversation with Mr. King, he told me that in his many years of working with the Assignee, Mr. Mitnick does not look at "good will" issues and that he will not be reviewing CFT's records to see if CFT client relationships and "goodwill" have been wrongfully transferred to or misappropriated by CFT-IOS, outside of the Assignment, in order to sue to recover for such conduct.

44.    For the reasons set forth in the accompanying Affidavits of Jean T. DiMaria, Marie Knee and Mark Vignoles and the Declaration of Richard J. Shore, and exhibits thereto and Plaintiff's Memorandum of Law, it is submitted that Defendants' motions should each be denied in their entirety.

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
29th day of January, 2010

MARK A. BERMAN