UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JEAN T. DIMARIA, Individually and as Administratrix of the Estate of GARY DIMARIA, and, Derivatively on behalf of CONTRACT FURNITURE TRANSPORT, INC., CONTRACT FURNITURE TRANSPORT ASSOCIATES, INC., CONTRACT FURNITURE WAREHOUSE CORP., CONTRACT FURNITURE PAINTING, LLC, CONTRACT FURNITURE INSTALLATIONS, LLC, DEPENDABLE MOVING AND STORAGE INC., DEPENDABLE MOVING AND STORAGE CORP., SERVICE EAST, INC., and CONTRACT FURNITURE TRANSPORTATION, LLC,

                              Plaintiff,

-against-

MARTIN GOOR, CFT-IOS, INC., RYAN GOOR, STEVEN MITNICK, ESQ., as Assignee for the Benefit of Creditors for CONTRACT FURNITURE TRANSPORT INC, and CONTRACT FURNITURE TRANSPORT, ASSOCIATES, INC., CONTRACT FURNITURE TRANSPORT, INC., CONTRACT FURNITURE TRANSPORT ASSOCIATES, INC., CONTRACT FURNITURE WAREHOUSE CORP., CONTRACT FURNITURE PAINTING, LLC, CONTRACT FURNITURE INSTALLATIONS, LLC, DEPENDABLE MOVING AND STORAGE, INC., DEPENDABLE MOVING AND STORAGE CORP., SERVICE EAST, INC., and CONTRACT FURNITURE TRANSPORTATION, LLC,

                              Defendants

Index No. 1:09-CV-1011

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT, STEVEN J. MITNICK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)**

*Of Counsel and On the Brief:*
        Melissa A. Peña (MP-3320)
        Norris, McLaughlin & Marcus, PA
        Attorneys for Steven J. Mitnick
        875 Third Avenue, 8th Floor
        New York, New York 10022
        (212) 808-0700

## **PRELIMINARY STATEMENT**

Notwithstanding the in excess of one hundred pages submitted by plaintiff to this Court in opposition to the motion for summary judgment and motions to dismiss submitted by defendants, plaintiff has yet to articulate a single basis for why Steven J. Mitnick ("Mitnick") should remain a party to this action.

While plaintiff contends that she has established a *prima facie* case of personal jurisdiction over Mitnick, plaintiff cannot satisfy CPLR §§ 301 or 302. The only jurisdictional hooks alleged by plaintiff are that Mitnick: (i) sent collection letters to New York companies who owe monies to Contract Furniture Transport Associates, Inc. and Contract Furniture Transport, Inc. (hereinafter jointly referred to as the "Assignor Companies"), (ii) engaged in communications with counsel for plaintiff; (iii) appeared *pro hac vice* in three matters before the New York courts; and (iv) is the founder of SM Financial which "may" cause him to travel to New York for business. These factual allegations alone do not indicate a continuous relationship between Mitnick and the State of New York to warrant a finding of jurisdiction pursuant to CPLR § 301.

Moreover, given plaintiff's purported cause of action against Mitnick (which has yet to be clearly articulated) does not arise from Mitnick's alleged contacts in New York, there are no grounds to exercise jurisdiction over Mitnick under the New York long arm statute, CPLR § 302.

Recognizing the feebleness of her jurisdictional argument, plaintiff seeks discovery on the issue. This request should be denied and Mitnick's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), should be granted as plaintiff has not even set forth a good faith basis for this Court's exercise of jurisdiction over Mitnick.

Plaintiff fares no better in her attempt to defeat the portion of Mitnick's motion seeking dismissal of the claims against him for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6). Mitnick is not an indispensable party to this dispute as full relief can be afforded to plaintiff in the absence of Mitnick in this proceeding – plaintiff can obtain a judgment against the Assignor Companies and file a proof of claim in the assignment action. Furthermore, it is not enough for plaintiff to simply allege, in a conclusory fashion, that Mitnick is an indispensable party when the First Amended Complaint fails to set forth a single cause of action against him.

For these reasons and as further demonstrated below, the First Amended Complaint as to Mitnick should be dismissed with prejudice.

## LEGAL ARGUMENT

### POINT I

**PLAINTIFF HAS NOT ESTABLISHED A BASIS FOR THIS COURT TO EXERCISE *IN PERSONAM* JURISDICTION OVER MITNICK TO DEFEAT HIS MOTION TO DISMISS OR EVEN WARRANT FURTHER DISCOVERY ON THE SUBJECT.**

**A. There Has Been No Showing that Mitnick Conducts Business in the State of New York and, thus, Personal Jurisdiction Over Mitnick Does Not Exists Under CPLR § 301.**

Contrary to plaintiff's arguments, personal jurisdiction over Mitnick does not exists pursuant to CPLR § 301 as there has been no showing that Mitnick conducts business in the State of New York. To find that a nonresident defendant conducts business in New York under CPLR § 301, "New York law requires that the defendant be present in New York not occasionally or casually, but with a fair measure of permanence and continuity." Landoil Res. Corp. v. Alexander & Alexander Servis., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).

2

In Patel v. Patel, 497 F.Supp.2d 419 (E.D.N.Y. 2007), this Court addressed whether an individual conducted business in the State of New York sufficient to warrant the exercise of jurisdiction pursuant to CPLR § 301. Plaintiffs, residents of New York, Pennsylvania and New Jersey, commenced an action against a South Carolina businessman alleging that he breached an oral agreement whereby defendant agreed to recover the entire investment made by the parties to a company and split the recovery. Defendant moved to dismiss the case for lack of personal jurisdiction. Id. at 420-21.

In support of their claim that defendant conducted business in New York, plaintiffs relied on the following facts: defendant had sent law firm bills to the New York plaintiff relating to his efforts to collect the investment; defendant communicated with the New York plaintiff by telephone and email; defendant accepted monies from the plaintiffs; and defendant tendered a check to the New York plaintiff. Id. at 424.

In determining whether the defendant conducted business in New York, this Court recognized that defendant had no office in New York, did not maintain a bank account in New York and had no employees in New York. This Court further acknowledged that plaintiffs did not allege that they had any dealings with defendants while he was in New York. Under these circumstances, the Court found that the allegations raised by plaintiffs were insufficient to establish a *prima facie* case that the defendant was doing business in New York reasoning as follows:

> The "doing business" standard contemplates a substantial and continuous relationship between the defendant and the forum state with some degree of permanency. *See Landoil*, 918 F.2d at 1043; *Hoffritz*, 763 F.2d at 58. The acts alleged by the plaintiffs are too few in number, and much too isolated and sporadic to establish the type of "continuous and systematic" conduct necessary to find jurisdiction under CPLR 301. In its review of the precedents relevant to this motion to dismiss, the Court has found numerous cases where a court declined to find jurisdiction under CPLR 301 notwithstanding allegations of New York

3

contacts sufficiently more substantial than the plaintiffs allege here. *See* Landoil, 918 F.2d at 1045 (finding that thirteen business trips made by employees of the defendants to New York made sporadically during an eighteen month period were "insufficient to establish the systematic and continuous presence within the state that New York law requires"); Hoffritz, 763 F.2d at 57-58 (finding that "extensive" correspondence regarding the parties' business relationship and fifty-four visits to New York to discuss business with the plaintiff was insufficient); Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir.1983) (holding that the defendant's acts sending a "cease and desist" letter to the plaintiff and sending an unspecified number of mail order sales to New York were insufficient to support jurisdiction under CPLR 301); Avecmedia, Inc. v. Gottschalk, No. 03 Civ. 7831(BSJ), 2004 WL 1586411, at *6 n. 2 (S.D.N.Y. July 14, 2004) (holding that the defendants' presence at a meeting in New York, in addition to telephone and e-mail communications to New York plaintiffs were insufficient to satisfy CPLR 301); Fort Knox Music, Inc. v. Baptiste, 139 F.Supp.2d 505, 509-10 (S.D.N.Y.2001) (finding that the defendant was not doing business in New York solely by accepting royalty payments over several years from the New York plaintiff); Hearst Corp. v. Goldberger, 96 Civ. 3620(PKL)(AJP), 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997) (finding that the defendant's e-mail correspondence with New Yorkers and maintenance of a website accessible in New York here were insufficient to establish that defendant is "doing business" under CPLR 301). Accordingly, the Court finds that the plaintiffs failed to make a prima facie showing that jurisdiction is proper under CPLR 301.

Id. at 425-26.

Applying the holding in Patel and the cases cited therein to the instant case, it is evident that plaintiff cannot establish that Mitnick conducts business in the State of New York. The following facts cannot be disputed: Mitnick is a New Jersey domiciliary; he does not own any real property in the State of New York; he does not maintain a New York bank account; and maintains no office in the State of New York. Moreover, plaintiff has not had any dealings with Mitnick while he is in New York. The only alleged connection that Mitnick has to the State of New York is that he sent collection letters to New York companies who owe monies to the Assignor Companies; he has appeared in three cases as *pro hac vice* counsel; and he has engaged in communications with counsel for plaintiff. Similar to this Court's holding in Patel, these

4

minor contacts in the State of New York are not sufficient to find that Mitnick is "doing business" in the State pursuant to CPLR § 301.

Furthermore, plaintiff's claim that Mitnick is the founder of a company known as SM Financial, which "may" conduct business in the State of New York does not dictate a finding that CPLR § 301 has been satisfied. Even if SM Financial conducts business in the State of New York, this simply does not translate into personal jurisdiction over Mitnick. See The Reynolds Corp. v. National Operator Services, Inc., 73 F. Supp. 2d 299, 303 (W.D.N.Y. 1999) ("[J]ust because the corporation is subject to jurisdiction does not, *ipso facto*, subject every corporate officer to personal jurisdiction. Something more is required.").

### B. There is No Basis to Exercise Jurisdiction Over Mitnick Pursuant to CPLR § 302(a)(1).

While plaintiff contends that jurisdiction over Mitnick is appropriate pursuant to CPLR § 302(a)(1), fatal to plaintiff's argument is that the purported cause of action against Mitnick does not arise from his alleged contacts in New York. CPLR § 302(a)(1) provides that" *[a]s to a cause of action arising from any of the acts enumerated in this section*, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state . . ." N.Y.C.P.L.R. § 302(a)(1) (emphasis added). "In all cases, there must be a strong nexus between the plaintiff's cause of action and the defendant's in state conduct for long-arm jurisdiction to apply. D'Amoto v. Starr, 2007 WL 895793 *3 (E.D.N.Y. Feb. 27, 2007).[1]

---

[1] Mitnick respectfully submits that this Court can easily dispel with plaintiff's argument under CPLR § 302(a)(1) given the lack of nexus between Mitnick's alleged contacts within New York and plaintiff's causes of action and, as such, focuses on such argument. However, defendant does not concede that plaintiff can establish that Mitnick transacts business in New York sufficient to warrant long arm jurisdiction. The sending of letters to recipients in New York and communications with plaintiff's counsel do not satisfy this requirement. See Carlson v. Cuevas, 932 F. Supp. 76, 78 (S.D.N.Y. 1996) ("The mere existence of defendant's telephone calls into New York are not sufficient to sustain New York long arm jurisdiction."); Chertok v. Ethyl Corp. of Canada, 341 F. Supp.

5

In the instant case, as set forth above, plaintiff alleges that Mitnick transacts business in the State of New York on the basis of sending collection letters on behalf of the assignment estate, his contacts with counsel for plaintiff, his *pro hac vice* admission into three New York cases and by way of his connection to SM Financial. Although the First Amended Complaint does not articulate a clear cause of action against Mitnick, at best, plaintiff has named Mitnick in the action to recover a purported loan DiMaria made to the CFT Entities for $284,000. None of Mitnick's alleged contacts to New York have anything to do with plaintiff's attempt to recover on such loan.

The very cases relied upon by plaintiff further bolster the conclusion that plaintiff cannot proceed under CPLR § 302(a)(1) without the requisite nexus. Plaintiff relies on various cases where courts have found that personal jurisdiction existed over a defendant who sent collection letters to recipients in the forum state. In each of these cases, the plaintiffs' causes of action arose from the defendants' acts of sending out such collection letters. See Slys v. Hand, 831 F. Supp. 321, 322-23 (S.D.N.Y. 1993) (finding personal jurisdiction over Indiana attorney who sent collection letters to New York plaintiff, pursuant to CPLR 302(a)(1), where plaintiff stated claim under the Fair Debt Collection Practices Act); Sisler v. Wal-Mart Stores, Inc., 2003 WL 23508105 (W.D.N.Y. 2003) (relying on Slys to find personal jurisdiction over law firm who sent collection letters to plaintiff where plaintiff alleged that she was subject to improper debt collection practices); Stein v. Illinois State Assistance Comm'n, 535 N.W.2d 101, 105 (Wis. Ct.

---

1251, 1256 (S.D.N.Y. 1972) (determining that court did not have jurisdiction over non-New York resident who engaged in sporadic business negotiations over the phone); Lawrence Wisser and Co., Inc. v. Slender You, Inc., 695 F. Supp. 1560, 1563 (S.D.N.Y. 1988) ("Where [defendant] performed all work outside of New York for a client based outside of New York and did not come even once to New York for business, she did not purposefully avail herself of the privilege of conducting activities in New York, and thus was not transacting business in this state within the meaning of [CPLR section] 302(a)(1)).

App. 1995) (determining Wisconsin court had jurisdiction over Illinois creditor who sent collection letters to plaintiff who asserted allegations for wrongful debt collection practices).

Plaintiff's reliance on Estes Peterbilt, Inc. v. Nielsen Trucking Leasing, Inc., 824 S.W.2d 460 (Mo. Ct. App. 1992) is similarly misplaced. In Peterbilt, plaintiff, a repair company, sought to recover for repairs it had made to certain trucks from the owner of the truck, a company who leased the trucks and had filed an assignment for the benefit of creditors (the "assignor company") and the assignee for the benefit of creditors. Plaintiff maintained a garage man's lien on the trucks due to the assignor company's non-payment. The Court found that long arm jurisdiction could be exercised over the assignee for the benefit of creditors as such assignee sent his agent to Missouri in order to sell the specific truck to which plaintiff had a lien upon. Id. at 463-64.[2]

The facts in Peterbilt are a far cry from the instant case. In Peterbilt, there was a nexus between plaintiff's claim, its lien on the subject truck, and the assignee's activities of selling the exact collateral from which plaintiff was entitled to recover the amounts due.

Here, plaintiff simply alleges that if Mitnick is to properly carry out his duties as the assignee for the Assignor Companies, he will need to transact business in New York by communicating with New York companies to collect outstanding receivables, which "may" cause him to meet with these companies in New York. Plaintiff further alleges that Mitnick and his accountant have communicated with counsel for plaintiff. These communications consisted of Mitnick cooperating in providing documents requested by plaintiff. Again, there is no nexus between these alleged contacts and plaintiff's cause of action. Plaintiff does not allege that

---

[2]   Similar to CPLR 302(a)(1), the Missouri Long Arm Statute provides that "[a]ny person . . . who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if any individual, his personal representative to the jurisdiction of the court of this state *as to any cause of action arising from the doing of any such acts*: (1) The transaction of any business within this state. . ." Estes Peterbilt, 824 S.W.2d at 462 n.1 quoting Rule 506.500m RS Mo. Supp. 1984 (emphasis added).

7

Mitnick failed to collect receivables from New York companies (she would be hard pressed to do so given the assignment action has only been pending for approximately two months) nor does plaintiff allege that Mitnick engaged in any improper conduct with respect to his communications with her counsel.

Given plaintiff cannot establish the requisite nexus between any alleged cause of action against Mitnick and his purported contacts to the State of New York, no *in personam* jurisdiction over Mitnick exists pursuant to CPLR 302(a)(1).

### C. This Court Should Deny Plaintiff's Request for Discovery.

Although it is within this Court's discretion to grant discovery on the issue of personal jurisdiction, courts have found that "a court should not approve a fishing expedition when little more exists than plaintiff's bare assertion that jurisdiction is proper[.] [U]nder New York law, plaintiffs are entitled to discovery regarding the issue of personal jurisdiction *if* 'they have made a sufficient start, and shown their position not to be frivolous.'" Manhattan Life Ins. Co. v. A.J. Stratton Syndicate, 731 F. Supp. 587, 593 (S.D.N.Y. 1990) quoting Peterson v. Spartan Industries, Inc., 33 N.Y.2d 463, 467, 354 N.Y.S.2d 905, 908, 310 N.E.2d 513, 516 (1974).

Plaintiff's claim that *in personam* jurisdiction exists over Mitnick is wholly frivolous. All that plaintiff has shown is the following: Mitnick sent collection letters to New York companies from *outside* of the State; Mitnick has appeared *pro hac vice* with *local New York counsel* on three matters in New York; Mitnick has communicated with counsel for plaintiff to cooperate in producing requested documents and that SM Financial (as opposed to Steven Mitnick, individually) may have business in New York. To proceed with discovery on such a flimsy showing would be a waste of time especially given that Mitnick has already attested to the facts that he is a non-New York domiciliary, owns no property in the State, maintains no bank

account in New York and has conducted no business here. Accordingly, Mitnick respectfully requests that the Court deny plaintiff's request for further discovery.

## POINT II

**PLAINTIFF CANNOT DEFEAT MITNICK'S MOTION TO DISMISS, PURSUANT TO FED. R. CIV. PROC. 12(b)(6), AS MITNICK IS NOT AN INDISPENSABLE PARTY TO THIS DISPUTE.**

Plaintiff cannot establish a cause of action against Mitnick under the guise that he is an indispensable party to this dispute pursuant to Federal Rule of Civil Procedure 19(a)(1). Relying on Federal Rule of Civil Procedure 19(a)(1), which provides that a party is necessary if "in that person's absence, the court cannot accord complete relief among existing parties . . .", plaintiff contends that Mitnick is a necessary party as DiMaria cannot obtain recovery on any judgment against the Assignor Companies in his absence. Consistent with the First Amended Complaint, plaintiff's argument shows a complete misunderstanding of the New Jersey Assignment statute, N.J.S.A. 2A:19-1, *et seq.*[3]

To the extent DiMaria seeks to be paid from the assignment estate, she simply needs to file a proof of claim against the estate. See N.J.S.A. 2A:19-22. In fact, DiMaria does not even need to proceed to obtain a judgment against the Assignor Companies prior to filing a proof of claim and could be paid on her proof of claim in the absence of a judgment from this Court. As

---

[3] The case law relied upon by plaintiff for the proposition that the assignee is an "indispensable party" is wholly distinguishable from this case. Plaintiff relies on In re Superior Kitchen Prods. Corp., 44 F. Supp. 807, 809 (E.D.N.Y. 1942), aff'd sub norm Florence Trading Corp. Rosenberg, 128 F.2d 557 (2d Cir. 1942) where the Court found that an assignee for the benefit of creditors is a necessary party to a replevin action. Certainly, an assignee for the benefit of creditors, who is in possession of physical assets, which are the subject of a replevin action is an indispensable party to the dispute. These are not the circumstances here as DiMaria asserts no lien on the Assignor Companies' assets.

Similarly, plaintiff's reliance on In re Rouge Industries, Inc., 326 B.R. 55, 59 (Bankr. D. Del. 2005) is misplaced. In Rouge, the bankruptcy court found that a party who purchased the receivables of a debtor corporation was a necessary party to an adversary proceeding commenced by the debtor's creditor whereby the creditor sought a declaratory judgment that the receivables belonged to the debtor. Unlike the instant case, the assignee of the accounts receivables had its own independent ownership interest in the account receivables which were the subject of the action. Id. Mitnick does not claim an individual ownership interest in the Assignor Companies' assets.

such, it is not necessary for Mitnick, individually, to be named in this case when DiMaria can obtain full relief in the New Jersey assignment action.

Furthermore, what is lost on DiMaria and her counsel is that even if Mitnick remains in this dispute and DiMaria obtains a judgment against the Assignor Companies, this does not translate into Mitnick becoming obligated to pay the full amount of DiMaria's judgment. Under the New Jersey Assignment statute, Mitnick must distribute the Assignor Companies' assets in an order of priority and DiMaria's recovery will depend on the order of priority afforded to her claim and the amount of monies in the assignment estates.[4] See N.J.S.A. 2A:19-30 and 31.

Lastly, *it must be emphasized that plaintiff has failed to allege any wrongdoing on the part of Mitnick or that Mitnick has an individual stake in the outcome of this lawsuit.* While Mitnick believes that the claims against the Assignor Companies should be decided in the New Jersey assignment action, DiMaria could pursue her claim against the Assignor Companies in Mitnick's absence. After reviewing the financial affairs of the assignment estates and assessing the merits of DiMaria's claim, Mitnick could determine whether it is in the best interest of the estates for him to assist in the defense of such action in order to reduce the amount of DiMaria's claim against the estates. Nonetheless, Mitnick need not be named in his individual capacity.

---

[4] It is questionable whether plaintiff's counsel has explained this point to DiMaria prior to her expending the amount of legal fees she has incurred in this action. DiMaria could file a poof of claim against the assignment estate tomorrow for the $284,000 loan she purportedly made to the Assignor Companies. When Mitnick is in a position to determine the distribution to creditors in DiMaria's position, regardless of what Mitnick believes are the merits to DiMaria's claim, Mitnick may decide not to object to same on the grounds that it does not make any economic sense to the assignment estate. For example, if creditors are receiving a 30% distribution on their entire claim, Mitnick may not dispute DiMaria's claim and DiMaria would get a distribution of 30% of her $284,000.

DiMaria could spend significant time and money to get a $284,000 judgment against the Assignor Companies from this Court. After she obtains the judgment and files a proof of claim, depending on the distribution to creditors, Mitnick may again decide that its not worth it to object to DiMaria's claim. Put simply, DiMaria ends up in the same spot with the exception that in the second scenario she will have wasted a great deal of time, money and this Court's judicial resources.

## POINT III

## PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND THE FIRST AMENDED COMPLAINT AS TO MITNICK.

Plaintiff seeks to amend the Complaint to allege a breach of fiduciary duty claim against Mitnick based on the Seventh Circuit decision in LM Ins. Corp. v. Spaulding Enter. Inc., 533 F.3d 542 (7th Cir. 2008). Plaintiff should not be granted leave to amend when such amendments would be futile.

In LM Ins. Corp., defendant, Spaulding Enterprises, entered into an assignment for the benefit of creditors and, as a result, its assets were conveyed to an assignee. The assignee notified creditors, including plaintiff (a judgment creditor with a $186,000 claim against Spaulding Enterprises) of the assignment by way of the letter. The letter further indicated that Spaulding Estate's current assets totaled $150,000 (the amount of its accounts receivables), that an offer from a Spaulding related entity to purchase the company's assets in the amount of $5,000 was accepted and that pursuant to the purchase agreement, the assignee would solicit higher and better bids by advertising the sale in the Chicago Tribunal. Id. at 545.

Notwithstanding the assignee's representations, notice of the sale was not posted in the Chicago Tribunal. Moreover, at the time that the assignee sent the subject letter to plaintiff, the assignee had already conveyed Spaulding Enterprises' assets to the purchaser and a Bill of Sale was executed. Id. at 546 and 552.

In the instant case, plaintiff has no viable claim against Mitnick as Mitnick's alleged conduct is not akin to the assignee's behavior in LM Ins. Co. Here, plaintiff claims that Mitnick breached his fiduciary duty by filing a motion in the assignment proceeding to sell CFT's client list to defendant, CFT-IOS, for $10,000 pursuant to an offer made by CFT-IOS dated three days after the commencement of the assignment proceeding. Unlike the LM Ins. Co. case, there is no

evidence that the $10,000 constitutes inadequate consideration, that Mitnick already transferred the customer list without Court authorization or that Mitnick reneged on a representation to solicit higher and betters offers. To the contrary, it is common knowledge that a proposed sale in an assignment action are always subject to higher and better offers, which is why such motions are noticed to all creditors and parties in interest.

Moreover, even if plaintiff's allegations had some merit, the proposed sale to CFT-IOS has yet to be approved by the Court. As such, plaintiff cannot establish any damages based on a transaction that has not even occurred. Under these circumstances, to permit plaintiff to amend the First Amended Complaint to allege a cause of action for breach of fiduciary duty against Mitnick would be futile.

## POINT IV

## THIS COURT SHOULD ABSTAIN FROM DETERMINING PLAINTIFF'S CLAIMS.

Mitnick joins in the portion of the opposition filed by Ryan Goor and CFT-IOS and maintains that abstention is appropriate with respect to plaintiff's claims in this action. Under the New Jersey Assignment statute, Mitnick has the duty to investigate and determine whether or not a claim is valid and the true value of a claim. N.J.S.A. 2A:19-15. As set forth above, Mitnick must make a distribution to all valid claims in order of priority. See N.J.S.A. 2A:19-30 and 2A:19-31. In addition, it is within the state court's discretion to give instructions to Mitnick as to certain dividends. N.J.S.A. 2A:19-35. Mitnick also has the power and duty to bring preference and fraudulent transfer actions on behalf of the Assignor Companies' creditors. See N.J.S.A. 2A:19-14.[5] Under these circumstances, if this Court is to determine plaintiff's claims, there is a significant risk of conflicting results.

---

[5] Mitnick takes issue with plaintiff's running diatribe that "[t]here is little chance that the Goor-chosen Assignee" will properly pursue claims on behalf of the estate, including a claim to recover the "goodwill" of the

12

Furthermore, to the extent plaintiff is permitted to pursue any claims against Mitnick, these claims should be heard by the state court. The New Jersey Assignment statute specifically provides the right for an aggrieved creditor to commence an action to compel the assignee to perform his duties. See N.J.S.A. 2A:19-17 ("The court may, from time to time, compel the assignee to proceed to the execution of his duties."); see also N.J.S.A. 2A:19-20 (recognizing that all actions in law or equity that can be brought against the assignee arising from his disposition of estate property shall be commenced within nine months of when the cause of action accrues). Accordingly, in the event the Court is not inclined to grant Mitnick's motion to dismiss, any claims against Mitnick should be heard in the New Jersey assignment action.

## CONCLUSION

Based on the foregoing, defendant, Steven J. Mitnick respectfully requests that the Court grant his motion and dismiss all claims against him with prejudice and grant such other relief that is determined to be just and proper.

Dated: New York, New York  
February 4, 2010

NORRIS, McLAUGHLIN & MARCUS, PA  
Attorneys for Defendant, Steven J. Mitnick

By: /s/ Melissa A. Peña  
Melissa A. Peña (MP-3320)  
875 Third Avenue, 8th Floor  
New York, New York 10022  
Telephone: (212) 808-0700

---

entities. It is preposterous that plaintiff believes that Mitnick, an attorney in the State of New Jersey, will breach his fiduciary duty to the creditors of the Assignor Companies' estates and risk his reputation and credibility before the New Jersey state courts.

Furthermore, this Court should not rely on the Affidavit of Mark Berman regarding the "hearsay" comment that the assignee's accountant allegedly advised him that Mitnick has never pursued a claim to recover goodwill. In furtherance of his fiduciary duty, Mitnick will pursue claims that will provide a benefit to an assignment estate weighing the costs and risks associated with litigation. The assignment action is less than two months old. As such, Mitnick and his accountants have not even completed their initial investigation. Plaintiff simply ignores this fact and requests that this Court hear an action that belongs in the state court of New Jersey.